**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| JANE BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No._____ |
| | ) |
| DEPUTY BECKY STEVENS, | ) |
| In her individual and official capacity, | ) |
| | ) |
| Serve at: Jasper County Jail | ) |
| 405 E. 5th St. | ) |
| Carthage, MO 64836 | ) |
| | ) |
| DEPUTIES BOBBIE WHITE, | ) |
| EVERETT BARRETT, LAWRENCE | ) |
| TAPPANA, EVERT BICKFORD, | ) |
| MICHAEL KINGSBURY, NANCY | ) |
| GUASTELLA, JODY ABRAM, | ) |
| TIMOTHY TIERNEY, BILLY ADAMS, | ) |
| MITCHELL LOWREY, RICHARD | ) |
| MAGGARD and TOBY LOGAN in their | ) |
| individual and official capacities, | ) |
| | ) |
| Serve at:  Jasper County Jail | ) |
| 405 E. 5th St. | ) |
| Carthage, MO 64836 | ) |
| | ) |
| BRITTNEY WORLEY, in her | ) |
| individual and official capacity, | ) |
| | ) |
| Serve at: *(Attorney to accept service)* | ) |
| | ) |
| ROSALIND RUSH, M.D. in her | ) |
| individual and official capacity, | ) |
| | ) |
| Serve at: *(Attorney to accept service)* | ) |
| | ) |
| COMPLETE QUICK CARE , LLC | ) |
| | ) |
| Serve at: *(Attorney to accept service)* | ) |
| | ) |

1

JASPER COUNTY, MISSOURI,                    )
                                             )
Serve at: Jasper County Clerk               )
           301 S. Main St., Rm 102          )
           Carthage, MO 64836               )
                                             )
                        Defendants.         )

## COMPLAINT

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C. and for her Complaint against Defendants, states as follows:

## INTRODUCTORY STATEMENT

1.     This is a civil action seeking money damages against the Defendants that include, Deputy Becky Stevens (hereinafter known as "Stevens",  Deputy Bobbie White, Deputy Everett Barrett, Deputy Lawrence Tappana, Deputy Evert Bickford, Deputy Michael Kingsbury, Deputy Nancy Guastella, Deputy Jody Abram, Deputy Timothy Tierney, Deputy Billy Adams, Deputy Mitchell Lowrey, Deputy Richard Maggard, Deputy Toby Logan (hereinafter referred to as "Deputy Defendants"), Brittney Worley (hereinafter referred to as "Nurse Worley"), Rosalind Rush, M.D. (hereinafter referred to as "Dr. Rush"), Complete Quick Care, LLC (hereinafter referred to as "Quick Care") and Jasper County (hereinafter referred to as "Jasper County"), for committing acts under the color of state law that deprived Plaintiff of her rights secured under the Constitution and laws of the United States; with intent to deny Plaintiff the protection of the Constitution and specifically the Fourteenth (14th) Amendment of the Constitution of the United States; and for refusing to neglecting to prevent such deprivations and denials to Plaintiff.

2.     Plaintiff further allege that the aforementioned Defendants are liable for Plaintiff's damages because they failed, on a continuing basis, to train, instruct, supervise, control and discipline law enforcement officers of Jasper County and others acting under the

2

color of state law and that said failure was the result of the official policy or the custom and practice of the aforementioned Defendants and that said conduct caused the deprivation of Plaintiff's rights secured under the United States Constitution.

3. Plaintiff further alleges that Defendants are liable for Plaintiff's damages because they failed to adhere to Missouri law in that they were negligent in their treatment and care of Richard Watson while he was in the custody of the Jasper County Jail and that specifically the actions of Dr. Rush and Nurse Worley were below the standard of care, were negligent and breached the duty of care that would have been used by a reasonable and prudent health care provider under the same or similar circumstances.

4. This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988. This Court has jurisdiction pursuant to 28 U.S.C. §1331.

5. Each party named in this Complaint is being sued in their official and individual capacities.

## PARTIES

6. At all times referenced herein, Plaintiff Jane Brown (hereinafter referred to as Plaintiff Brown) is a resident of Joplin, Jasper County, Missouri and the United States of America.

7. That Plaintiff Brown is the mother of Richard Watson and is the sole Class I descendant pursuant to RSMo. §537.080.1(1).

8. At all times referenced herein, Jasper County was a municipal corporation organized and existing under the laws of the State of Missouri.

9. At all times referenced herein, Stevens was an employee of the Jasper County Sheriff's Department and was acting within the course and scope of her employment and had

supervisory authority over other employees at the Jasper County Jail and was a policy maker for Jasper County in relation to the jail.

10.     At all times referenced herein Defendant Deputies were employees of Jasper County and were acting within the course and scope of their employment with the Jasper County Sheriff's Department.

11.     At all times referenced herein, Nurse Worley was employed by Quick Care and was contracted to Jasper County and was acting within the course and scope of her employment with Quick Care and Jasper County.

12.     At all times referenced herein, Dr. Rush was employed by Quick Care and was contracted to Jasper County and was acting within the course and scope of her employment with Quick Care and Jasper County and had supervisory authority over other employees of Quick Care, including but not limited to Nurse Worley.

13.     That Complete Quick Care is a corporation organized in the State of Missouri and is in good standing.

## BACKGROUND/FACTS COMMON TO ALL COUNTS

14.     On December 12, 2012, Richard Watson was taken by Jasper County Sheriff's Deputies to the Jasper County Jail in Carthage, Jasper County, Missouri.

15.     At the time Richard Watson was processed into the Jasper County Jail he provided information to the Jail and its employees that he had conditions that would require medical treatment while he was in Jasper County's custody. These conditions consisted of high blood pressure, back pain (as the result of two previous back surgeries), anxiety and depression. Richard Watson also reported that he took several medications which included Losartan, HCTZ,

Amlodipine, Metoprolol, Soma, Hydrocodone, Celebrex, Paxil, Amitryptiline, Zanax and Flexeril.

16.     At the time of Richard Watson's confinement in the Jasper County Jail it was also known by Jasper County and its employees that Richard Watson had a history of abusing alcohol.

17.     On or about December 16, 2012, Richard Watson fell in his jail cell, hitting his head and causing injury to his head.

18.     On December 16th or December 17th, 2012, as the result of his fall, Richard Watson was taken to a separate area of the Jasper County Jail and placed in an emergency restraint chair (hereinafter referred to as an "ERC" ).

19.     That an ERC is a restraint device in which the manufacturers of the device warn and require that no person be left in the device for more than two hours and warned that persons left in the device for more than two hours are subject to substantial injury and possible death.

20.     That information regarding the ERC was available to Jasper County, Stevens, all jail employees, Nurse Worley and Dr. Rush.

21.     That Richard Watson was placed in the ERC for no less than twenty-one (21) hours, continuously without any breaks.

22.     That during his confinement in the Jasper County Jail, Richard Watson's physical and mental condition deteriorated during the time he was in his jail cell and while he was in the ERC.

23.     That Richard Watson's deteriorating condition was documented by Nurse Worley, Dr. Rush and Stevens as well as the Deputy Defendants.

Case 3:13-cv-05120-MJW   Document 1   Filed 08/27/13   Page 5 of 22

24.     That Richard Watson's deteriorating condition consisted of a dangerously low blood pressure, dangerously low oxygen levels, sweating, shaking, confusion and obvious signs of pain.

25.     That Richard Watson had symptoms consistent with alcohol withdrawal, a condition that can result in death.

26.     That Richard Watson's confinement was recorded in the Jasper County Jail; however, there are at least four hours of recorded video missing from the period of time he spent in the ERC and an unknown amount of video recorded while he was in a cell.

27.     That during the period of time Richard Watson was in the Jasper County Jail, he was refused the medications that he took on a daily basis.

28     That during the period of time Richard Watson was in the Jasper County Jail, he was refused sufficient food, water and medical attention.

29.     That Richard Watson died while being restrained in the ERC on December 18, 2012 at approximately 4:00 a.m.

## CAUSES OF ACTION

### COUNT I
**Inhumane Conditions**

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C. and for Count I of her Complaint against Stevens, Rush, Worley and Deputy Defendants, states as follows:

30.     Plaintiff incorporates each and every allegation and averment as set forth in Paragraphs 1-29 as if fully set forth herein *in haec verba*.

31.     That the Deputy Defendants, as well as Stevens, Rush and Worley, were in charge of Richard Watson during his confinement in the Jasper County Jail.

6

32.     That Defendant Deputies placed Richard Watson in the ERC.

33.     That Stevens, Rush, Worley and Defendant Deputies were in charge of observing and monitoring Richard Watson.

34.     That Stevens, Rush, Worley and Defendant Deputies were aware of the dangers of leaving a person in an ERC for any period of time that exceeded two hours.

35.     That Stevens, Rush, Worley and Defendant Deputies observed Richard Watson and saw, while he was in the ERC, that he was sweating, shaking, was confused and exhibited signs of pain.

36.     That Stevens, Rush, Worley and Defendant Deputies observed Richard Watson with the signs and symptoms of alcohol withdrawal, a potentially dangerous condition that can cause death.

37.     That it was obvious to Stevens, Rush, Worley and Defendant Deputies that placing Richard Watson in the ERC and leaving him there for more than two hours put him at a substantial risk of harm, including death.

38.     That while Richard Watson was in the chair, Stevens, Rush, Worley and Defendant Deputies failed to properly provide food, water and proper medications.

39.     That at all times herein Stevens, Rush, Worley and Defendant Deputies knew that by not providing Richard Watson with proper amounts of food, water and medications put him in a dangerous position and placed him at a substantial risk of harm, including death.

40.     That at all times relevant herein Stevens, Rush, Worley and  Defendant Deputies were deliberately indifferent to the substantial risk caused by placing Richard Watson in an ERC and refusing to provide food, water and medications.

7

41.     That Defendant Deputies, Stevens, Rush and Worley acted with deliberate indifference in that they:

    (a)     Placed and left Richard Watson in an ERC.

    (b)     Left Richard Watson in an ERC for at least twenty-one (21) hours.

    (c)     Failed to provide proper amounts of food and water.

    (d)     Failed to provide required medications.

41.     That the deliberate indifference of Stevens, Rush, Worley and Defendant Deputies caused the death of Richard Watson on December 18, 2012.

42.     As a direct and proximate result of the negligence of Defendant Deputies, Stevens, Rush and Worley and possibly others, Jane Brown has, and will continue to suffer loss of companionship, comfort, guidance, counsel, and pecuniary damages that otherwise would have been provided by Richard Watson, before his death.

43.     That the actions of Stevens, Rush, Worley and Defendant Deputies in placing Richard Watson in an ERC for at a minimum of twenty-one (21) hours without providing food, water and medications amounted to punishment of a detainee and transgresses "concept of dignity, civilized standards of humanity and decency."

44.     That the conduct of Stevens, Rush, Worley and Defendant Deputies was reckless, malicious, wanton and willful with respect to the treatment of Richard Watson and an award of punitive damages is necessary to punish Defendant Deputies in their individual capacities and deter them and other from the same or similar transgressions in the future.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, seeking money damages against Stevens, Rush, Worley and Defendant Deputies in their individual and official capacities; for compensatory damages in an amount that is fair and reasonable; for punitive

8

damages against Stevens, Rush, Worley and Defendant Deputies in their individual capacities; for the costs of this action; for reasonable attorney fees and costs; and for such other and further relief as to the Court deems just and proper under the circumstances.

## COUNT II

### Failure to Provide Medical Treatment

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C. and for Count II of her Complaint against Stevens, Rush, Worley and Deputy Defendants, states as follows:

45.     Plaintiff incorporates each and every allegation and averment as set forth in Paragraphs 1-29 and 30-44 of Count I of this Complaint as if fully set forth herein *in haec verba*.

46.     That Richard Watson's condition was such that there existed a sufficiently serious medical need that was even obvious to lay person that he was in need of medical attention.

47.     That Richard Watson's symptoms of a serious medical need that was even obvious to a lay person consisted of the following:

  (a)     Food.

  (b)     Water.

  (c)     Shaking.

  (d)     Profuse Sweating.

  (e)     Confusion.

  (f)     Alcohol withdrawal.

  (g)     Low blood pressure.

  (h)     Pain symptoms.

  (i)     Low blood oxygen level.

9

48.     That Stevens, Rush, Worley and Defendant Deputies failed to properly provide medical treatment for his serious medical needs.

49.     That at all times relevant herein Stevens, Rush, Worley and Defendant Deputies acted with deliberate indifference in failing to provide proper medical treatment for Richard Watson.

50.     That the deliberate indifference of Stevens, Rush, Worley and Defendant Deputies caused the death of Richard Watson on December 18, 2012.

51.     As a direct and proximate result of the negligence of Defendant Deputies, Stevens, Rush and Worley and possibly others, Jane Brown has, and will continue to suffer loss of companionship, comfort, guidance, counsel, and pecuniary damages that otherwise would have been provided by Richard Watson, before his death.

52.     That the conduct of Stevens, Rush, Worley and Defendant Deputies was reckless, malicious, wanton and willful with respect to the treatment of Richard Watson and an award of punitive damages is necessary to punish Defendant Deputies in their individual capacities and deter them and other from the same or similar transgressions in the future.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, seeking money damages against Stevens, Rush, Worley and Defendant Deputies in their individual and official capacities; for compensatory damages in an amount that is fair and reasonable; for punitive damages against Stevens, Rush, Worley and Defendant Deputies in their individual capacities; for the costs of this action; for reasonable attorney fees and costs; and for such other and further relief as to the Court deems just and proper under the circumstances.

## COUNT III

### Excessive Force

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C. and for Count III of her Complaint against Stevens, Rush, Worley and Deputy Defendants, states as follows:

53.     Plaintiff incorporates each and every allegation and averment as set forth in Paragraphs 1-29, Paragraphs 30-44 of Count I and Paragraphs 45-52 of Count II of this Complaint as if fully set forth herein *in haec verba*.

54.     That the actions of Defendant Deputies, Stevens, Rush and Worley, by placing Richard Watson in the ERC, were excessive.

55.     That the actions of Defendant Deputies, Stevens, Rush and Worley of placing Richard Watson in the ERC for twenty-one hours constitutes malicious and sadistic conduct for the purpose of causing harm.

56.     That the actions of Defendant Deputies, Stevens, Rush and Worley of placing Richard Watson in the ERC was not a good faith effort to achieve any legitimate purpose.

57.     That the excessive force used by Defendant Deputies, Stevens, Rush and Worley caused the death of Richard Watson.

58.     As a direct and proximate result of the negligence of Defendant Deputies, Stevens, Rush and Worley and possibly others, Jane Brown has, and will continue to suffer loss of companionship, comfort, guidance, counsel, and pecuniary damages that otherwise would have been provided by Richard Watson, before his death.

59.     That the conduct of Stevens, Rush, Worley and Defendant Deputies was reckless, malicious, wanton and willful with respect to the treatment of Richard Watson and an award of

11

punitive damages is necessary to punish Defendant Deputies in their individual capacities and deter them and other from the same or similar transgressions in the future.

**WHEREFORE**, Plaintiff pray for judgment against Defendants, seeking money damages against Stevens, Rush, Worley and Defendant Deputies in their individual and official capacities; for compensatory damages in an amount that is fair and reasonable; for punitive damages against Stevens, Rush, Worley and Defendant Deputies in their individual capacities; for the costs of this action; for reasonable attorney fees and costs; and for such other and further relief as to the Court deems just and proper under the circumstances.

## COUNT IV

### Supervisory Liability

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C. and for Count IV of her Complaint against Stevens for failure to supervise, states as follows:

60.     Plaintiff incorporates each and every allegation and averment as set forth in Paragraphs 1-29, Paragraphs 30-44 of Count I, Paragraphs 45-52 of Count II and Paragraphs 53-59 of Count III of this Complaint as if fully set forth herein *in haec verba*.

61.     That at all times relevant in this Complaint, Stevens was the supervisor of the Deputy Defendants and was in charge of creating policies for the Jasper County Jail.

62.     That at all time relevant to Richard Watson's incarceration, any person that observed, monitored or treated Richard Watson was required to give information following those contacts to Stevens.

63.     That Stevens directed Defendant Deputies and other jail employees to place Richard Watson in the ERC.

12

64.     That Stevens ordered and directed Defendant Deputies and other jail employees to leave Richard Watson in the ERC for more than two hours consecutively.

65.     That Stevens ordered Defendant Deputies to remove safety stickers from the ERC so that inmates would not be aware of the limited amount of time that they were supposed to remain in the ERC.

66.     That Stevens did not allow Defendant Deputies or other jail employees to allow Richard Watson breaks from the ERC.

67.     That Stevens knew that Richard Watson was in need of medical treatment but denied same.

68.     That Stevens knew that Richard Watson's conditions, separately or in unison, created a substantial risk of harm.

69.     That Stevens observed Richard Watson and saw, while he was in the ERC, that he was sweating, shaking, was confused and exhibited signs of pain.

70.     That Stevens observed Richard Watson with the signs and symptoms of alcohol withdrawal, a potentially dangerous condition that can cause death.

71.     That it was obvious to Stevens that placing Richard Watson in the ERC and leaving him there for more than two hours put him at a substantial risk of harm, including death.

72.     That while Richard Watson was in the chair, Stevens failed to properly provide food, water and proper medications.

73.     That at all times herein Stevens knew that by not providing Richard Watson with proper amounts of food, water and medications put him in a dangerous position and place him at a substantial risk of harm, including death.

Case 3:13-cv-05120-MJW   Document 1   Filed 08/27/13   Page 13 of 22

74.     That at all times relevant herein Stevens was deliberately indifferent to the substantial risk caused by placing Richard Watson in an ERC and refusing to provide food, water and medications.

75.     That the deliberate indifference of Stevens caused the death of Richard Watson on December 18, 2012.

76.     As a direct and proximate result of the negligence of Defendant Deputies, Stevens, Rush and Worley and possibly others, Jane Brown has, and will continue to suffer loss of companionship, comfort, guidance, counsel, and pecuniary damages that otherwise would have been provided by Richard Watson, before his death.

77.     That the conduct of Stevens was reckless, malicious, wanton and willful with respect to the treatment of Richard Watson and an award of punitive damages is necessary to punish Stevens in her individual capacity and deter her and others from the same or similar transgressions in the future.

**WHEREFORE**, Plaintiff pray for judgment against Stevens, seeking money damages against Stevens in her individual and official capacities; for compensatory damages in an amount that is fair and reasonable; for punitive damages against Stevens, in her individual capacity; for the costs of this action; for reasonable attorney fees and costs; and for such other and further relief as to the Court deems just and proper under the circumstances.

## COUNT V

### Failure to Train

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C. and for Count V of her Complaint against Jasper County for failure to train, states as follows:

78.     Plaintiff incorporates each and every allegation and averment as set forth in Paragraphs 1-29, Paragraphs 30-44 of Count I, Paragraphs 45-52 of Count II, Paragraphs 53-59 of Count III and Paragraphs 60-77 of Count IV of this Complaint as if fully set forth herein *in haec verba*.

79.     That at all times mentioned herein, Jasper County was in charge of training, supervising, controlling and disciplining all officers and employees of the Jasper County Jail, including Stevens, Rush, Worley and Defendant Deputies.

80.     That Jasper County provided no training to the Stevens, Rush, Worley and Defendant Deputies in relation to the following:

      (a)     How to monitor inmates such as Richard Watson, who was suffering from alcohol withdrawal.

      (b)     How to monitor inmates such as Richard Watson, who was suffering from a serious medical condition such as dangerously low blood pressure, low blood oxygen, shaking, sweating and confusion.

      (c)     How to keep inmates such as Richard Watson from being placed in a condition that creates a substantial risk of harm.

      (d)     How to keep inmates such as Richard Watson from being left in the ERC for more time than was necessary.

15

81.     That Jasper County failed to train its employees as identified herein in
areas in which there was an obvious need to train in that an individual is not to be left in an ERC
for a minimum of twenty-one (21) hours and that an individual is in obvious need of treatment
when their blood pressure reaches dangerously low levels, their blood oxygen level reaches a
dangerous level, they are profusely sweating, shaking and are confused for lengthy periods of
time.

82.     That the failure of Jasper County to train its officers of the obvious conditions that
existed in relation to Richard Watson was deliberately indifferent to his Constitutional rights.

83.     That the deliberate indifference of Jasper County caused the death of Richard
Watson on December 18, 2012.

84.     As a direct and proximate result of the negligence of Defendant Deputies,
Stevens, Rush and Worley and possibly others, Jane Brown has, and will continue to suffer loss
of companionship, comfort, guidance, counsel, and pecuniary damages that otherwise would
have been provided by Richard Watson, before his death.

**WHEREFORE**, Plaintiff pray for judgment against Jasper County for compensatory
damages in an amount that is fair and reasonable; for the costs of this action; for reasonable
attorney fees and costs; and for such other and further relief as to the Court deems just and
proper under the circumstances.

## COUNT VI

### Negligence Pursuant to Missouri Law - Worley

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C. and for Count VI of her Complaint against Defendant Worley, states as follows:

85.     Plaintiff incorporates each and every allegation and averment as set forth in Paragraphs 1-29, Paragraphs 30-44 of Count I, Paragraphs 45-52 of Count II, Paragraphs 53-59 of Count III and Paragraphs 60-77 of Count IV and Paragraphs 78-84 of Count V of this Complaint as if fully set forth herein *in haec verba*.

86.     At all times mentioned herein, Worley professed and held herself out to the public as being skilled, careful and diligent in the practice of her profession as a certified nurse.

87.     That Worley was contracted with Jasper County as a certified nurse to treat inmates, including Richard Watson, for their medical complaints that occurred while being in the custody and control of the Jasper County Jail.

88.     That Worley was negligent and breached her duty of care in one or more of the following ways:

        (a)     Failing to properly administer medication to treat Richard Watson's conditions.

        (b)     Failing to have Richard Watson removed from the ERC.

        (c)     Failing to notify a licensed physician about Richard Watson's conditions as they deteriorated during her period of contact and monitoring.

        (d)     Failing to provide emergency treatment for Richard Watson as his condition deteriorated during her examinations and contact.

17

(e) Failing to closely monitor Richard Watson as his condition deteriorated while she was the acting nurse in the Jasper County Jail.

89. That as a direct and proximate result of her negligence and failure to use such care as a reasonably prudent healthcare provider would have used under the same or similar circumstances, Worley directly caused or contributed to cause the death of Richard Watson.

90. As a direct and proximate result of the negligence of Defendant Deputies, Stevens, Rush and Worley and possibly others, Jane Brown has, and will continue to suffer loss of companionship, comfort, guidance, counsel, and pecuniary damages that otherwise would have been provided by Richard Watson, before his death.

91. That the conduct of Worley was reckless, malicious, wanton and willful with respect to the treatment of Richard Watson and an award of punitive damages is necessary to punish Worley in her individual capacity and deter her and others from the same or similar transgressions in the future.

**WHEREFORE**, Plaintiffs pray for judgment against Worley, seeking money damages against Worley in her individual and official capacities; for compensatory damages in an amount that is fair and reasonable; for punitive damages against Worley, in her individual capacity; for the costs of this action; for reasonable attorney fees and costs; and for such other and further relief as to the Court seems just and proper under the circumstances.

## COUNT VII

### Negligence Pursuant to Missouri Law - Rush

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C. and for Count VII of her Complaint against Defendant Rush, states as follows:

18

92. Plaintiff incorporates each and every allegation and averment as set forth in Paragraphs 1-29, Paragraphs 30-44 of Count I, Paragraphs 45-52 of Count II, Paragraphs 53-59 of Count III, Paragraphs 60-77 of Count IV, Paragraphs 78-84 of Count V, Paragraphs 85-91 of Count VI of this Complaint as if fully set forth herein *in haec verba*.

93. At all times mentioned herein, Rush professed and held herself out to the public as being skilled, careful and diligent in the practice of her profession as a licensed physician.

94. That Rush was contracted with Jasper County as a licensed physician to treat inmates, including Richard Watson, for their medical complaints that occurred while being in the custody and control of the Jasper County Jail.

95. That Rush was negligent and breached her duty of care in one or more of the following ways:

    (a)    Failing to properly administer medication to treat Richard Watson's conditions.

    (b)    Failing to have Richard Watson removed from the ERC.

    (c)    Failing to provide emergency treatment for Richard Watson as his condition deteriorated during her examinations and contact.

    (d)    Failing to closely monitor Richard Watson as his condition deteriorated while she was the acting physician in the Jasper County Jail.

96. As a direct and proximate result of the negligence of Defendant Deputies, Stevens, Rush and Worley and possibly others, Jane Brown has, and will continue to suffer loss of companionship, comfort, guidance, counsel, and pecuniary damages that otherwise would have been provided by Richard Watson, before his death.

19

97.    As a direct and proximate result of the negligence of Defendant Deputies, Stevens, Rush and Worley and possibly others, Jane Brown has, and will continue to suffer loss of companionship, comfort, instruction, guidance, counsel, training, support, and pecuniary damages that otherwise would have been provided by Richard Watson, before his death.

98.    That the conduct of Rush was reckless, malicious, wanton and willful with respect to the treatment of Richard Watson and an award of punitive damages is necessary to punish Rush in her individual capacity and deter her and others from the same or similar transgressions in the future.

**WHEREFORE**, Plaintiff prays for judgment against Rush, seeking money damages against Rush in her individual and official capacities; for compensatory damages in an amount that is fair and reasonable; for punitive damages against Rush, in her individual capacity; for the costs of this action; for reasonable attorney fees and costs; and for such other and further relief as to the Court deems just and proper under the circumstances.

## COUNT VIII

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C. and for Count VIII of her Complaint against Defendant Quality Quick Care, states as follows:

99.    Plaintiff incorporates each and every allegation and averment as set forth in Paragraphs 1-29, Paragraphs 30-44 of Count I, Paragraphs 45-52 of Count II, Paragraphs 53-59 of Count III, Paragraphs 60-77 of Count IV, Paragraphs 78-84 of Count V, Paragraphs 85-91 of Count VI, Paragraphs 92-98 of Count VII of this Complaint as if fully set forth herein *in haec verba*.

100.    That at all time relevant herein, Rush and Worley were employees of Defendant Quick Care and Quick Care was responsible for their actions pursuant to the doctrine of *Respondeat Superior.*

101.    That Defendant Quick Care was negligent and breached its duty of care through Rush and Worley as follows:

(a)    Failing to properly administer medication to treat Richard Watson's conditions.

(b)    Failing to have Richard Watson removed from the ERC.

(c)    Failing to provide emergency treatment for Richard Watson as his condition deteriorated during her examinations and contact.

(d)    Failing to closely monitor Richard Watson as his condition deteriorated while she was the acting physician in the Jasper County Jail.

102.    That as a direct and proximate result of Rush and Worley's negligence and failure to use such care as a reasonably prudent healthcare provider would have used under the same or similar circumstances, Defendant Quick Care directly caused or contributed to cause the death of Richard Watson.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Quick Care, seeking money damages against Defendant Quick Care in its official capacity; for compensatory damages in an amount that is fair and reasonable; for punitive damages against Defendant Quick Care; for the costs of this action; for reasonable attorney fees and costs; and for such other and further relief as to the Court deems just and proper under the circumstances.

<strong><u>COUNT IX</u></strong>

<strong>42 U.S.C. §1988</strong>

**COMES NOW** Plaintiff Jane Brown, by and through her attorneys of record, Whiteaker & Wilson, P.C., and for Count IX of this Complaint, states to the Court as follows:

103.    Plaintiffs incorporate each and every allegation and averment as set forth in Paragraphs 1-29, Paragraphs 30-44 of Count I, Paragraphs 45-52 of Count II, Paragraphs 53-59 of Count III and Paragraphs 60-77 of Count IV, Paragraphs 78-84 of Count V, Paragraphs 85-91 of Count VI, Paragraphs 92-98 of Count VII and Paragraphs 99-102 of Count VIII of this Complaint as if fully set forth herein *in haec verba*.

104.    For all claims in this Complaint on which Plaintiff prevail, Plaintiff requests compensation for her reasonable attorney fees and other costs as provided for by 42 U.S.C. §1988(b).

<strong><u>DEMAND FOR JURY TRIAL</u></strong>

105.    Plaintiff request a demand for jury trial on all issues.

**WHITEAKER & WILSON, P.C.**

By /s/ Brandon C. Potter
      BRANDON C. POTTER
      Missouri Bar No. 52232

1848 South Country Hill Lane
Post Office Box 3758
Springfield, MO  65808-3758
Telephone No. (417) 882-7400
Facsimile No. (417) 882-6101
Email:  bcp@wandwlaw.com

*Attorneys for Plaintiffs*